HOUSTON CHRONICLE PUBLISHING COMPANY, Plaintiff,

v.

HOUSTON TYPOGRAPHICAL UNION NO. 87, Defendant.

Civ. A. No. 66-H-336.

United States District Court
S. D. Texas,
Houston Division.

Oct. 27, 1966.

Liddell, Austin, Dawson & Sapp, Willis Witt, Houston, Tex., for plaintiff.

Bliss Daffan, Houston, Tex., for defendant.

INGRAHAM, District Judge.

*Memorandum:*

Plaintiff, the Houston Chronicle Publishing Company, sues to compel arbitration under its collective bargaining contract with defendant, Houston Typographical Union No. 87. Both parties have filed motions for summary judgment, and this court will grant plaintiff's motion and order arbitration.

Section 8(a) of the contract provides in part:

"The operation, authority and control of each composing room shall be vested exclusively in the Office through its representative, the foreman."

Section 8(h) provides that:

"No fines or disciplinary action shall be imposed by the Union upon any foreman * * * for his actions in enforcing the office rules * * * or for carrying out the instructions of the Office * * *"

The Union received complaints from some of its members concerning a foreman, Eugene Martin. It is undisputed that the charges related to Martin's performance of his duties as a representative of plaintiff, actions within Sections 8(a) and (h) of the contract. The Union filed the complaints and summoned Martin to appear before its Executive Committee to discuss the problems. Acting on the advice of an official of plaintiff, Martin did not appear as directed. The Union then instituted proceedings by which Martin was fined, reprimanded, and ordered to appear again. This action was based solely on Martin's failure to appear when summoned. Martin has continued to ignore the proceedings, and the Union is now taking steps to expel him. The Joint Standing Committee was unable to resolve the controversy. Plaintiff demanded that the matter be set before a Board of Arbitration, but the Union refused.

The Union's position is that Martin has not been fined or disciplined because of his activities on behalf of plaintiff. The Union claims that the only discipline inflicted upon Martin has been due solely to his failure to observe Union rules by refusing to appear when summoned. The Union characterizes the discipline as Union "conduct of its own affairs", which is protected by Section 6 of the contract:

"Nothing contained herein shall be construed to interfere in any way with the creation or operation of any rules not in conflict with law or this contract by any chapel, or by the Union for the conduct of its own affairs."

The dispute between the parties is whether under Section 8(h) the Union can accept charges against a foreman and require him to appear before the Union to answer the charges. The answer depends on whether or not such proceedings constitute "discipline" under Section 8(h). Section 6 can have no application unless Section 8(h) permits the Union to file charges and issue summons. Only if Section 8(h) is construed to permit such undertakings by the Union does the question arise as to whether Section 6 permits the Union to discipline foremen for failure to appear and answer charges relating to their duties on behalf of management.

Sections 8(h) and 6 could be construed in at least three ways:

1. The Union is prohibited from instituting any compulsory proceedings relative to a foreman's performance of his duties under Section 8(h).

2. The Union may summon foremen to answer charges before the Union, but may not discipline foremen for any mat-

ters arising from such proceedings, including a foreman's refusal to appear.

3. The Union may summon foremen to answer charges before the Union, and may further discipline foremen for their failure to observe Union rules concerning such proceedings.

However, this court is not called upon to resolve these questions of the proper construction of the contract. Rather, the question before this court is whether these issues should be submitted to a Board of Arbitration. This court holds that the contract provides for arbitration of the dispute.

Sections 4 and 5 of the contract establish an arbitration procedure. The initial step is the consideration by a Joint Standing Committee of:

"*All questions that may arise as to the construction to be placed upon any clause of this agreement,* or as to any alleged violation of this agreement or any matter of difference affecting the relationship of the parties hereto which cannot be settled by conciliation." (emphasis supplied) Section 4.

Section 4 continues:

"Should the Joint Standing Committee be unable to agree * * * it shall immediately refer the matter to arbitration * * * providing, controversies or disagreements which may be decided in accordance with the terms of this Section 4 shall be limited exclusively and specifically to differences in the interpretation and enforcement of the terms of this contract, *including the question of whether under Sections 5(a) and (b), the disputed issue is covered by the terms of this contract,* and including the interpretation of all language contained in this contract." (emphasis supplied)

Section 5 provides:

"(a) The contract alone shall govern relations between the parties on all subjects concerning which any provision is made in this contract, and any dispute involving any such subjects shall be determined in accordance with the Joint Standing Committee and Arbitration Code of Procedure.

(b) The general laws of the International Typographical Union, in effect January 1, 1965, not in conflict with State or Federal laws, shall govern relations between the parties on conditions not specifically enumerated herein."

The threshold issue, whether the Union's initial summons to Martin constituted "discipline" under Section 8(h), presents a question of contractual construction. Section 4 specifies arbitration for such disputes ("All questions that may arise as to the construction to be placed upon any clause of this agreement"). The Union's defense that the discipline constituted only Union conduct of its own affairs begs the arbitration question, for the argument goes only to questions of contractual interpretation. The Union relies on Sections 5(b) and 6; however, Section 4 explicitly specifies arbitration to resolve questions as to whether under Section 5(b) the disputed issue is covered by the contract.

The Union argument has not yet been made in the proper forum under the contract, a Board of Arbitration. The Union asks this court to hold not only that the contract permits its handling of Martin, but also that the question is free of doubt, for Section 4 makes the question of arbitrability itself subject to arbitration. The Union does claim that the affidavit of its Executive Official "conclusively shows" that Martin was not disciplined for his Section 8 activities (saying, among other things, "If Martin had appeared * * * his explanation of the matters forming the basis of the complaint against him would probably have satisfied the Committee, and the matter would have ended right there and then"). However, nothing in the affidavit shows that Section 8(h) permits the Union to summon foremen on complaints regarding their performance of duties on behalf of management.

This court is aware of the growing body of federal case law establishing a

liberal policy favoring arbitration of labor disputes. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, for example, holds that doubts regarding arbitrability should be resolved in favor of arbitration. This court need not rely on such cases. Arbitration in this case follows not from any policies of federal courts, but from the clear terms of the contract. The parties included in their contract a very broad arbitration provision which includes the dispute before this court.

The clerk will notify counsel to draft and submit final judgment denying defendant's motion for summary judgment and granting plaintiff's motion for summary judgment ordering submission of the dispute to arbitration. The judgment should also order the Union to defer further proceedings against Martin pending the outcome of arbitration.